UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ERIC B. BATES, on behalf of himself, all others similarly situated, the general public, and as an "aggrieved employee" under the California Labor Code Private Attorneys General Act,<br><br>          Plaintiff,<br><br>     v.<br><br>MORGAN STANLEY SMITH BARNEY LLC, a limited liability company, CITIGROUP GLOBAL MARKETS INC., a corporation formerly doing business as SMITH BARNEY, CITIGROUP GLOBAL MARKETS HOLDINGS, INC., a corporation, and DOES 1 through 50, inclusive,<br><br>          Defendants. | NO. CIV. S-09-3049 FCD/GGH<br><br><u>MEMORANDUM AND ORDER</u> |

----oo0oo----

　　　This matter is before the court on (1) plaintiff Eric B. Bates' ("plaintiff") motions for determination that defendants Morgan Stanley Smith Barney LLC ("MSSB"), Citigroup Global Markets Inc. f/k/a Smith Barney ("CGMI") and Citigroup Global

1

Markets Holdings Inc. ("CGMI Holdings") (collectively, "defendants") cannot pursue arbitration of class claims (Docket #s 17 and 23)[1] and (2) defendants' motion to stay plaintiff's first amended complaint ("FAC") pending MSSB's arbitration proceedings before the Financial Industry Regulatory Authority ("FINRA") (Docket #29).[2]  Plaintiff asserts five claims for relief[3] in this putative California-wide class action against defendants, including plaintiff's former employers, defendant CGMI and MSSB.  By their motion, defendants ask the court to stay pending arbitration plaintiff's FAC in its entirety, arguing that all of plaintiff's claims, concerning the subject promissory notes signed by plaintiff and the class, should be stayed pending the related proceedings brought by MSSB before FINRA and

---

[1] Plaintiff filed two separate motions, one on his own behalf (Docket #23) and one on behalf of putative class member, James R. Sevilla ("Sevilla") (Docket #17).  Both motions raise essentially the same arguments, and thus, the court considers the motions jointly herein.  Additionally, while plaintiff styled the motions as a request for a "determination that [defendants'] arbitration claim[s] [are] part of the [instant] class action," the motions are more properly construed as counter-motions to defendants' motion to stay the proceedings, as plaintiff seeks by his motions to preclude MSSB's arbitrations.

[2] Because of the similarities of this case to Wright v. RBC Capital Markets Corp., et al., Civ. No. S-09-3601 FCD/GGH, the court finds that oral argument will not be of material assistance, and accordingly, it submits these matters on the briefs.  E.D. Cal. L.R. 230(g).

[3] Plaintiff alleges claims for: (1) violation of the California Labor Code for failure to pay all wages, to provide accurate records and to reimburse business expenses (first claim for relief); (2) an injunction pursuant to Cal. Labor Code § 226 (second claim for relief); (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. (third claim for relief); (4) declaratory relief (fourth claim for relief); and (5) violation of California's Private Attorneys General Act of 2004 ("PAGA"), Cal. Labor Code § 2699.3.  (Not. of Removal, filed Nov. 2, 2009, Ex. 3, attaching FAC.)

2

1  plaintiff's other claims, to the extent they do not relate to the
2  promissory notes, should nonetheless be stayed in the interest of
3  judicial economy.  Plaintiff contends by his motions that FINRA
4  Rule 13204 precludes the arbitration of class claims, and MSSB's
5  arbitration claims against plaintiff and Sevilla are encompassed
6  within the instant class action and, thus, may not be arbitrated.
7  Defendants respond, to the contrary, that Rule 13204 only
8  prohibits defendants from forcing plaintiff or a class member to
9  bring their class claims in arbitration; it does not apply to
10 defendants' individual, affirmative claims against plaintiff or
11 any class member such as Sevilla.

     This case is related to Wright v. RBC Capital Markets Corp.,
et al., Civ. No. S-09-3601 FCD/GGH also pending before the
undersigned ("Wright").  (Docket #12.)  In a memorandum and
order, filed June 24, 2010, this court stayed, in part, the
Wright case pending the defendant's FINRA arbitration, finding
Rule 13204 did not preclude the defendant's arbitration which was
filed prior to Wright's action and did not involve the same
claims as the class action.  (Wright, Docket #39.)  Defendants
contend here that Wright controls and likewise mandates a stay of
this action.  Plaintiff argues that this case involves different
facts, and thus, Wright is distinguishable and does not require
entry of a stay in this case.

     For the reasons set forth below, the court finds that Wright
governs this case, and accordingly, a stay of the action is
warranted, largely for the same reasons as set forth in the
Wright memorandum and order.  The court, therefore, grants
defendants' motion for a stay, staying the entirety of the action

in the interest of judicial economy.[4]  Plaintiff's counter-motions are accordingly denied.

Plaintiff moves in the alternative, should his motions be denied, for an order granting an interlocutory appeal on the issue of Rule 13204's applicability.  Plaintiff's motion is denied as the court cannot find that there is substantial ground for difference of opinion on the issue.  28 U.S.C. § 1292(b).

## BACKGROUND

In May 2003, plaintiff became employed by defendant CGMI. (DeRobertis Decl., filed Aug. 6, 2010 [Docket #38], ¶ 3.)[5]  At the time he was hired as a financial advisor, plaintiff was provided a loan of $183,879, and he executed a promissory note in connection with this loan.  (Id. at Ex. A.)  Under the terms of the note, plaintiff agreed to repay the loan in nine equal annual installments of $20,431 during his continued employment with CGMI.  (Id.)  These annual payments would be made pursuant to an agreement in which plaintiff would receive special compensation from CGMI in the annual amount due as long as he remained employed with CGMI.  (Id.)  However, if plaintiff resigned from

---

[4] In Wright, the defendant only moved for a partial stay, agreeing to answer those claims that did not involve the promissory notes.  As such, the court did not consider the propriety of entering a complete stay of the action.  Here, for the reasons set forth below, the court finds that defendants have made a sufficient showing to demonstrate that a stay of the entire action is in the interest of judicial economy.

[5] Plaintiff's objection to the DeRobertis Declaration is overruled.  Defendants properly disclosed DeRobertis as a potential witness in the case in their supplemental Rule 26 disclosures, and thus, there is no prejudice to plaintiff by the court's consideration of his declaration.  More significantly, the essential background information provided by DeRobertis is not disputed by plaintiff.  (See Docket #42.)

4

his employment with CGMI before the expiration of nine years, the remaining principle balance of the loan plus interest immediately became due, and he would no longer receive the special compensation payments. (Id.)

In February 2004, alleged putative class member Sevilla became employed as a financial advisor by defendant CGMI. (Id. at ¶ 4.) At the time of his hire, Sevilla was provided with a loan of $220,434, and he executed a promissory note in connection with this loan. Sevilla agreed to repay the loan in eight equal annual installments of $27,554.25 during his continued employment with CGMI. (Id. at Ex. B.) Like plaintiff, these annual payments were made pursuant to an agreement in which Sevilla would receive special compensation from CGMI in the annual amount due as long as he remained employed with CGMI. (Id.) However, if he resigned from his employment with CGMI before the expiration of eight years, the remaining principle balance of the loan plus interest immediately became due, and Sevilla would no longer receive the special compensation from CGMI. (Id.)

On June 12, 2009, Sevilla resigned from his employment with MSSB[6] and went to work for Stifel Nicolaus & Co. (Id. at ¶ 6.) At the time of his resignation, the principle balance remaining on his loan was $82,662.75. (Id.) On June 15, 2009, plaintiff resigned from MSSB and also went to work for Stifel Nicolaus & Co. (Id. at ¶ 7.) At the time of his resignation, the

---

[6] On June 1, 2009, defendant CGMI and non-party Morgan Stanley entered into a joint venture resulting in the formation of defendant MSSB. (Id. at ¶ 5.) As a result, plaintiff and Sevilla became employed by MSSB, and defendants maintain that MSSB holds the rights to collect on their promissory notes. (Id.)

5

1 principle balance remaining on his loan was $61,293.  (Id.)
2     On July 17, 2009, MSSB sent Sevilla a demand letter
3 requesting that he repay the principle balance on the loan.
4 (Gottlieb Decl., filed Aug. 6, 2010 [Docket #39], Ex. E.)
5 Sevilla refused to do so, and to date, he has not repaid the
6 outstanding balance on the loan. (DeRobertis Decl., ¶ 8.)
7 On July 22, July 31, and August 10, 2009, MSSB sent plaintiff
8 demand letters requesting that he repay the principle balance of
9 his loan. (Gottlieb Decl., Exs. B, C, and D.)  Plaintiff refused
10 to do so, and to date, he has not repaid the outstanding balance
11 on the loan. (Gottlieb Decl, Ex. E; DeRobertis Decl., ¶ 8.)
12     On August 21, 2009, plaintiff filed his putative class
13 action complaint in California state court, alleging among other
14 claims, a declaratory relief claim seeking to declare the
15 "loans," provided by defendants to their financial advisors,
16 void as an illegal attempt to recoup a signing "bonus" provided
17 to the advisors.  The complaint also set forth (1) a claim based
18 on various wage and hour violations of the California Labor Code;
19 (2) a claim for an injunction under the California Labor Code to
20 remedy certain violations; and (3) a claim under California
21 Business and Professions Code § 17200 based on certain Labor Code
22 violations.  (See Not. of Removal, filed Nov. 2, 2009.)  On
23 October 22, 2009, plaintiff filed a first amended complaint which
24 set forth the same claims but added a claim based on California's
25 PAGA.  (FAC, ¶¶ 66-71, Ex. 3 to Not. of Removal.)
26     On November 2, 2009, defendants removed the case to this
27 court under the Class Action Fairness Act.  On November 17, 2009,
28 Carl Wright, represented by the same counsel as plaintiff herein,

1  filed a nearly identical class action in this court against his
2  former employer, RBC Capital Markets (the aforementioned <u>Wright</u>
3  case).
4     On January 29, 2010, the defendant in <u>Wright</u> filed a
5  "Partial Motion to Dismiss or Stay" ("<u>Wright</u> Motion to Stay"),
6  contending that (1) Wright's declaratory relief claim, and
7  related derivative claims, seeking to declare similar promissory
8  notes unenforceable as violative of the California Labor Code,
9  should be stayed because RBC had filed a FINRA arbitration
10 against Wright to collect amounts due under his promissory note;
11 (2) alternatively, Wright's declaratory relief and other related
12 claims pertaining to the promissory notes should be dismissed
13 under Rule 12(b)(6) for failure to state a cognizable claim; and
14 (3) various of Wright's California Labor Code claims should be
15 dismissed under the first-to-file rule because they were
16 encompassed within another class action already pending in
17 another district.
18    On January 29, 2010, MSSB filed a FINRA arbitration claim
19 against Sevilla, alleging breach of contract for Sevilla's
20 failure to repay the amounts due under the promissory note.
21 (Gottlieb Decl., Ex. F.)  On March 19, 2010, recognizing that
22 "disposition of certain legal issues raised in the <u>Wright</u>
23 Defendant's Motion to Dismiss or Stay Plaintiff's First Amended
24 Complaint may have significance with respect to certain of the
25 legal issues raised in the Bates complaint," the parties in the
26 instant action agreed to a stay of discovery pending the outcome
27 of the <u>Wright</u> Motion to Stay. (Docket #14, ¶ C.)
28

7

On June 2, 2010, plaintiff filed the instant "Motion for Determination that Arbitration Claim is Part of Class Action" with respect to Sevilla (Docket #17.)  In the motion, plaintiff asserts that FINRA Rule 13204 precludes MSSB's arbitration against Sevilla.  (Id.)

On June 24, 2010, the court issued its ruling on the Wright Motion to Stay (1) dismissing Wright's first claim for relief alleging various California Labor Code violations under the first-to-file rule; (2) concluding that the FINRA arbitration against Wright could proceed; and (3) staying Wright's declaratory relief claim, and related derivative claims, pertaining to the enforceability of the subject promissory notes. (Wright, Docket #39.)

The same day, on June 24, MSSB filed a FINRA arbitration claim against plaintiff, alleging breach of contract for plaintiff's failure to repay the amounts due under the promissory note he executed. (Jaskowiak Decl., filed July 29, 2010 [Docket #28], Ex. A.)  Citing Wright, on July 6, 2010, defendants requested that plaintiff stay this action until the conclusion of MSSB's arbitration against him.  (Id. at Ex. B.)  Plaintiff refused to do so.  (Id., ¶ 5.)

Instead, on July 23, 2010, plaintiff filed his "Motion for a Determination that Arbitration Claim is Part of Class Action." (Docket #23.)  In this motion, plaintiff contends despite the decision in Wright, that FINRA Rule 13204 prevents MSSB's arbitration against plaintiff from proceeding. (Id.)  On July 29, 2010, defendants filed their "Motion to Stay Proceedings," arguing Wright mandates a stay of this action.

8

## ANALYSIS

Here, unlike Wright, plaintiff relies exclusively on subsection (d) of Rule 13204 to preclude MSSB's arbitration of its claims against plaintiff and Sevilla.[7] (Docket #40 at 4 n. 3.)  In Wright, the plaintiff argued that the defendant's arbitration was precluded by either subsection (b) or (d) of Rule 13204.  Because Bates does not raise subsection (b) as a basis for his motion, the court does not consider that provision.  Instead, it reaches only the issue whether MSSB's arbitration is precluded by subsection (d) of Rule 13204.

That section provides in pertinent part:

> A member or associated person may not enforce any arbitration agreement against a member of a . . . putative class action with respect to any claim that is the subject of the certified or putative class action[.]

(Ex. 3 to Torngren Decl., filed July 22, 2010 [Docket #25].) This court held in Wright that subsection (d) is applicable only when (1) the class action was filed before the arbitration and (2) the claims in the arbitration are "the subject of the certified or putative class action." (Wright, Docket #39 at 21.) Clearly, in this case, unlike Wright, the class action *was* filed in advance of MSSB's arbitration claims.  Indeed, plaintiff's lawsuit was filed some five months *prior* to *any* arbitration claim (MSSB filed its arbitration claim against Sevilla five months after plaintiff instituted this action and it filed its

---

[7] Neither plaintiff nor Sevilla dispute that pursuant to their employment with defendants, they entered arbitration agreements with defendants.  They also do not dispute that if the court finds Rule 13204 inapplicable here, they must proceed in the arbitration while the instant claims relating to that proceeding are stayed.

arbitration claim against plaintiff eleven months later). Plaintiff is correct that this fact is an important distinction from Wright, as there, Wright's class action was filed four months *after* the defendant filed its FINRA arbitration claim. This court emphasized in Wright, that a proper construction of subsection (d) required that a party seek to arbitrate a claim that was *already* the subject of an *existing* putative class action. In other words, by its plain terms, subsection (d) protected only those persons "who have already initiated a class action or who are already members of class actions that have been initiated." (Id.)  Plaintiff and Sevilla are such persons. However, contrary to plaintiff's argument, that does not end the inquiry.

For subsection (d) to preclude MSSB's arbitrations, the court must also find that MSSB's arbitration claims are the subject of the instant class action. The court answered that precise question in Wright, finding that the defendant's arbitration claim in Wright was "distinct from and not the same as any claim that [the] plaintiff now asserts in this court." (Id.)  The same is true in this case, as the claims asserted by plaintiff Bates on his own behalf and on behalf of class members, like Sevilla, are the exact claims asserted by plaintiff Wright on his own behalf and on behalf of the putative class. (Compare Bates' FAC to Wright, Docket #39 at 19 and Wright FAC ¶s 60-65.) Thus, the court's holding in Wright is equally applicable here.

By its arbitration claims, MSSB does not seek to compel plaintiff and Sevilla to litigate their class claims addressing a variety of purported California Labor Code, UCL and PAGA

violations.  Instead, MSSB seeks to arbitrate its individual, *contractual* claims against plaintiff and Sevilla--claims which FINRA provides expedited handling in light of the Authority's belief that promissory note claims "involve straightforward contracts with few documents being entered into evidence."  See FINRA Rule 13806 (providing expedited handling, including proceedings before a single arbitrator with simplified discovery procedures, for claims in which an "associated person failed to pay money owed on a promisory note"); SEC Regulatory Notice 09-49, Promissory Note Proceedings (August 2009).  MSSB's arbitration claims, like the claims in Wright, are that specific type of contract claim.  (Wright, Docket #39 at 19.)  By contrast, plaintiff's putative class action is based on numerous violations predominately of the California Labor Code, which allegedly give rise to violations also of the UCL and PAGA.

Plaintiff's reliance on Olde Discount Corp. v. Hubbard, 4 F. Supp. 2d 1268 (D. Kan. 1998) and Coheleach v. Bear Sterns & Co., Inc., 440 F. Supp. 2d 338 (S.D.N.Y. 2006) to support his argument that the claims in MSSB's arbitrations are the subject of this class action is misplaced.  These cases are distinguishable because the defendants in Hubbard and Coheleach each sought to compel the plaintiffs to arbitrate *precisely the same claims that were brought as a class action against the same defendant,* and the courts in both cases applied FINRA Rule 13204 to prevent the defendants from doing so.  In Hubbard, the court concluded that Rule 13204 prevented a firm from forcing *the plaintifff's own* race discrimination claims into arbitration because the plaintiff had elected to bring these claims as a class action.  4 F. Supp.

1  2d at 1271.  Similarly, in Coheleach, the court concluded that
2  Rule 13204 prevented a firm from forcing *the plaintiff's own*
3  state and federal wage and hour law claims into arbitration
4  because the plaintiff had brought these claims as part of a class
5  action.  440 F. Supp. 2d at 341.
6  　　　Hubbard and Coheleach do not support plaintiff's position
7  that Rule 13204 can be used to prevent a firm from asserting *its*
8  *own independent* claim against an associated person in
9  arbitration.  Indeed, this court specifically noted in Wright
10 that Hubbard is inapposite to the facts here: Hubbard "represents
11 a correct application of Rule 13204 but the factual circumstances
12 are different than this case."  (Wright, Docket #39 at 23.)
13 Moreover, these cases also foreclose plaintiff's argument that
14 Rule 13204 is rendered meaningless if this court likewise
15 precludes its application in this case.  These cases demonstrate
16 how Rule 13204 is properly applied to certain circumstances.
17 　　　Further, plaintiff does not cite any case in which a court
18 applied Rule 13204 to prevent a firm from pursuing its own
19 independent claim against an associated person.  And, in the only
20 case raising a similar argument to plaintiff's herein, the court
21 determined that Rule 13204 did not apply.  (See Wright, Docket
22 #39 at 22 [discussing Banus].)
23 　　　Plaintiff also attempts to distinguish this case from
24 Wright, arguing that here the subject promissory notes were not
25 refinanced.  This is a distinction without a difference for the
26 purposes of Rule 13204.  As described above, the type of
27 promissory note plaintiff Wright seeks to invalidate in his
28 putative class action is the same as the notes challenged by

12

plaintiff and the class here. However, that fact is irrelevant for purposes of Rule 13204(d) because both the defendant in Wright and the defendants in this case do not seek to force the plaintiffs nor any class member to arbitrate their *class* claims in the arbitration. Instead, the defendants seek only to litigate their individual, contractual claims against the plaintiffs. Accordingly, the intended purpose of Rule 13204 is not implicated here, as defendants do not seek to force plaintiff and Sevilla to bring their claims in arbitration, in order to prevent them from pursuing a class action or defeat class certification or participation. See D.E. Frey & Co., Inc. v. Wherry, 27 F. Supp. 2d 950, 951 (S.D. Tex. 1998) (recognizing that the motivating principle behind the Rule remains to prevent firms from using an arbitration agreement to compel an employee to arbitrate his claims against the firm that are already encompassed by a class action, as a means of frustrating the employee's choice to litigate in court). Ultimately, as this court emphasized in Wright, Rule 13204 was not intended to be used "as a sword" as plaintiff seeks to do so here; rather, it was intended only to be "a shield" to protect a class member from being compelled to arbitrate class claims. (Wright, Docket #39 at 24.)

    Because like in Wright, MSSB in this action "seek[s] only to have its own claim arbitrated, which is distinct from and not the same as any claim that plaintiff [or Sevilla] now asserts in this court," the court must find Rule 13204 inapplicable. As such, plaintiff's motions are properly denied, and a stay of this action is merited.

As set forth in the Wright order, given the liberal policy in favor of arbitration, the court finds that MSSB's claims before FINRA should proceed, while plaintiff's instant class claims are stayed. While the parties dispute how each claim for relief specifically relates to the subject promissory notes, they do agree that plaintiff's FAC, at least in part, raises some claims that are unrelated to the promissory notes. In Wright, the defendant agreed to answer those unrelated claims and sought only a partial stay of the action. (Docket #39 at 3 n. 3, 24.) Here, however, defendants move for a stay of the entire action.

Certainly, judicial economy militates in favor of staying plaintiff's claim for declaratory relief challenging the enforceability of the promissory notes, as well as his other claims to the extent they seek to invalidate the promissory notes as violative of the California Labor Code, UCL or PAGA, as the outcome of the FINRA proceedings could well impact those claims in this action. Allowing the two matters to proceed concurrently would unnecessarily risk inconsistent judgments and defeat efficiency. Interests of judicial economy also, however, support entry of a complete stay of the action. Ultimately, the decision to stay the entire action rests in the court's discretion. See Mediterranean Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458, 1465 (9th Cir. 1983) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a [complete] stay of an action before it, pending resolution of independent proceedings which bear upon the case."); see also United States ex rel. Newton v. Neumann Caribbean International, Ltd., 750 F.2d 1422, 1427 (9th Cir.

14

1985) (concluding that considerations of economy and efficiency supported the district court's decision to stay a non-arbitrable claim while arbitration proceeded). Here, the gravamen of the action is plaintiff's challenge to the promissory notes; to the extent other issues are involved, including certain alleged wage and hour violations (see e.g. FAC ¶s 41-46, 48-51), they are minor issues which the court can easily address in conjunction with the full resolution of the case, following the arbitration proceedings. Permitting these less substantial issues to proceed, while the other central issues are stayed pending the arbitrations, defeats efficiency. See Chelsea Family Pharmacy v. Medco Health Solutions, Inc., 567 F.3d 1191, 1196 (10th Cir. 2009) (concluding that a stay of the entire court action is appropriate when "arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit"). Accordingly, the court will stay the action in its entirety.

    Should the court deny his motions, plaintiff, alternatively, moves for an order permitting interlocutory appeal as to Rule 13204's applicability to the instant action.[8] Under 28 U.S.C. § 1292(b), a court may permit an interlocutory appeal "by certifying that the order [at issue] 'involves a controlling

---

[8] The court notes that plaintiff, without citation to any authority, simply requested that the court certify the question for "interlocutory appeal" in the conclusion section of his memorandum of points and authorities. (Docket #24 at 15.) Only in his reply, for the first time, did plaintiff discuss the requirements for an interlocutory appeal under Section 1292(b). The court may properly disregard arguments raised for the first time in a reply, and thus, it could deny plaintiff's request on this basis alone. However, defendants responded to plaintiff's request in their opposition, and as such, the court considers whether interlocutory appeal is warranted in this case.

15

question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" James v. Price Stern Sloan, Inc., 283 F.3d 1064, 1068 n. 6 (9th Cir. 2002). The Ninth Circuit, however, has repeatedly recognized that use of interlocutory appeals are reserved for "extraordinary cases." United States Rubber Co. v. Wright, 359 F.2d 784, 785 (9th Cir. 1966).

    The court agrees with plaintiff that the motions present controlling issues of law, involving Rule 13204's applicability to this putative class action, and that an appeal could materially advance the termination of the litigation, as a contrary decision by the Ninth Circuit would permit this action to proceed immediately, rather than await the conclusion of the FINRA arbitrations. However, plaintiff must also show that there is substantial ground for difference of opinion on the issues. The court acknowledges there is no controlling Ninth Circuit precedent on point, but contrary to plaintiff's assertions, the court's decision does not conflict with any other decisions on point. Hubbard and Coheleach raise different facts and are distinguishable. And, Banus' underlying rationale supports this court's interpretation of Rule 13204 as detailed in the Wright order. It is not sufficient to grant an interlocutory appeal that this court's Wright decision and the instant order may raise issues of first impression. Krangel v. Gen. Dynamics Corp., 968 F.2d 914 (9th Cir. 1992) (recognizing that simply because a court is the first to rule on a particular question does not mean that there is a substantial difference of opinion to support an

16

interlocutory appeal); see also Fed. Dist. Ins. Corp. v. First Nat'l Bank of Waukesha, Wis., 604 F. Supp. 616 (E.D. Wis. 1985) (recognizing that the mere fact that there is a lack of authority on a disputed issue does not necessarily establish some substantial ground for difference of opinion under the statute). Plaintiff must show a likelihood that the court's decision will be reversed on appeal. See Oyster v. Johns-Manville Corp., 568 F. Supp. 83 (E.D. Pa. 1983) (holding that a substantial ground for difference of opinion may be demonstrated by adducing conflicting and contradictory opinions of courts which have ruled on the issue). Plaintiff has not made such a showing here. Plaintiff's mere claim that this court's ruling is incorrect does not demonstrate the required substantial ground for difference of opinion. Wausau Bus. Ins. Co. v. Turner Const. Co., 151 F. Supp. 2d 488 (S.D. N.Y. 2001). Indeed, plaintiff makes no showing that this case presents the type of "extraordinary" question which warrants the grant of an interlocutory appeal.

**CONCLUSION**

For the foregoing reasons, plaintiff's motions to preclude arbitration of class claims (Docket #s 17 and 23) are DENIED, and his alternative request for an order permitting interlocutory appeal is also DENIED. Defendants' motion to stay the action in its entirety is GRANTED. The Clerk of the Court is directed to enter a stay of the action. The parties are ordered to file a joint status conference statement within 20 days of any disposition of the FINRA arbitrations involving plaintiff or

///
///

1  Sevilla.
2       IT IS SO ORDERED.
3  DATED: August 24, 2010

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE